UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYMEYON HILL,<br><br>  Plaintiff,<br><br>  v.<br><br>DAVID BAUGHMAN, et al.,<br><br>  Defendants. | No. 2:18-cv-03089 MCE AC<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a civil detainee proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion for summary judgment. ECF No. 46. Plaintiff has filed an opposition, ECF No. 47, and defendants have filed a reply. ECF No. 48. For the reasons that follow, the undersigned recommends that the motion for summary judgment be granted.

I.   Procedural History

This case is proceeding on plaintiff's first amended complaint against defendants Rios and White for violations of plaintiff's Fourteenth Amendment right to be free from excessive force. ECF No. 27 (screening order).

II.   Plaintiff's Allegations

At all times relevant to the allegations in this case, plaintiff was a civil detainee at California State Prison-Sacramento ("CSP-Sac"). In his verified amended complaint, plaintiff

1

states that on October 26, 2018, defendants White and Rios came into his cell and asked him if he wanted to be housed in Block 6. ECF No. 25 at 3. Plaintiff told them that he had safety concerns in that housing unit. ECF No. 25 at 3. After responding that he did not have safety concerns and yelling at plaintiff to "get down," defendants opened plaintiff's cell door and began "forcefully punching plaintiff in the right facial area several times" after he was handcuffed. Id. This caused major damage to plaintiff's facial area and resulted in him developing TMJ. Id.

III.   Motion for Summary Judgment[1]

A.   Defendants' Arguments

Defendants assert that they are entitled to summary judgment because "[t]he evidence shows that Defendants did not use any force, much less excessive force, on Hill [and that his] claim that he was punched in the face is directly discredited by contemporaneous medical records showing that Hill had no injuries consistent with being beaten." ECF No. 46 at 6. As a result, no reasonable jury would believe plaintiff's self-serving allegations that are not supported by any evidence. Based on the absence of any genuine issue of material dispute, defendants request summary judgment.

B.   Plaintiff's Opposition

In his opposition, plaintiff relies on his verified complaint to establish a genuine issue of material dispute concerning his excessive force claim. ECF No. 47. As evidence of his injury, plaintiff contends that he repeatedly complained of jaw pain, an earache, and dizziness as a result of defendants' actions. ECF No. 47 at 5. Plaintiff attaches the same Medical Report from October 29, 2018 that defendants rely on in support of their summary judgment motion; medical records indicating the lack of any jaw fracture on October 29, 2018; a Progress Note indicating "right ear pain [o]f unclear etiology;" and, a July 24, 2019 letter containing a treatment

////

---

[1] Contemporaneously with the filing of the motion for summary judgment, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 46-11; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

recommendation for "severe pain over the R masseter area with good range of motion of the TMJ." ECF No. 47 at 8.

The court notes that plaintiff's opposition does not comply with the Federal Rules of Civil Procedure or the Local Rules. See Fed. R. Civ. P. 56(c)(1)(A) (requiring that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."); Local Rule 260(b) (requiring plaintiff to file a separate document identifying which of defendants' undisputed facts are admitted and which are disputed). "Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted). In light of these considerations, the court will consider the record in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. Only those assertions in the opposition which have evidentiary support in the record will be considered, however.

C.    Defendants' Reply

By way of reply, defendants point out that "Hill offers no evidence to address the significant discrepancies in his story, but merely repeats the vague, uncorroborated, and self-serving allegations contained in his Amended Complaint." ECF No. 48 at 1. Specifically, plaintiff ignores the three day gap between the date of the alleged excessive force incident and the date that he reported any injuries stemming from it. ECF No. 48 at 3. The medical records attached to plaintiff's opposition do not demonstrate that any medical provider actually diagnosed

3

him with an ear injury or TMJ. Id. As a result, plaintiff has not provided any contemporaneous medical records supporting his claim of excessive force. Id.

IV.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

V.   Fourteenth Amendment Excessive Force Standard

The Due Process Clause of the Fourteenth Amendment protects civil detainees from the use of excessive force that amounts to punishment. Gibson v. County of Washoe, Nevada., 290

F.3d 1175, 1197 (9th Cir. 2002).  The Fourteenth Amendment standard for excessive force cases is the same as the Fourth Amendment "objective" test, rather than the often harder to prove Eighth Amendment "subjective" standard.  Kingsley v. Hendrickson, 135 S. Ct. 2466, 2470 (2015).  Thus, the inquiry is whether the defendant's "actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to underlying intent or motivation."  Graham v. Connor, 490 U.S. 386, 397 (1989); see also Kingsley, 135 S. Ct. at 2473.  Courts balance several factors focusing on the reasonableness of the defendant's actions given the circumstances, including, (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline.  White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010).

### VI. Undisputed Material Facts

Defendants Rios and White were employed as correctional officers at CSP-Sac on the date at issue.  Defendants' Separate Statement of Undisputed Material Facts ("DSSUMF") at ¶ 2.  On October 26, 2018, plaintiff was housed in the Alternative Safe Housing Module in B Facility, Block 7 at CSP-Sac.  DSSUFM at ¶ 3.  At approximately 3:30 pm, defendants went to plaintiff's cell to escort him to his newly assigned housing unit in Block 6 after he had been discharged from the Enhanced Outpatient Program ("EOP") housing unit.  DSSUFM at ¶ 4-5.  After being advised that defendants were escorting him to Block 6, plaintiff submitted to handcuffs without incident.  DSSUFM at ¶ 6.  After defendant Rios placed the handcuffs on plaintiff through the food port slot, Rios signaled to the control booth officer to open plaintiff's cell door.  DSSUFM at ¶ 6.  According to defendants, they escorted plaintiff to his newly assigned cell without any incident or use of force.  DSSUFM at ¶ 7.  Both defendants specifically deny punching plaintiff or using any amount of force during the cell escort.  DSSUFM at ¶ 8.  According to defendants, they did not observe any injury to plaintiff during the escort nor did plaintiff inform either defendant that he was injured.  DSSUFM at ¶ 11.  Since there was no use of force, neither defendant completed a Crime/Incident Report involving plaintiff on October 26, 2018 as is required any time a

correctional officer uses or witnesses the use of force against an inmate. DSSUFM at ¶ 10.

Correctional Officer Dumayas, who worked as the control booth officer on the day at issue, does not remember seeing any officer punch plaintiff in the face or use any excessive or unnecessary force against him when removing him from his cell. ECF No. 46-7 at ¶ 4. Likewise, Officer Dumayas does not recall seeing any injury to plaintiff on October 26, 2018. ECF No. 46-7 at ¶ 6.

On October 27, 2018, plaintiff was seen by CDCR staff psychologist Tucker for a pre-arranged follow-up appointment for mental health treatment. DSSUFM at ¶ 12. According to Psychologist Tucker, plaintiff did not report any officer punching him in the face. ECF No. 46-9 at ¶ 4 (Declaration of J. Tucker). Plaintiff's mental health treatment records from October 27, 2018 do not reflect the presence of any physical injury or any discussion of an excessive force incident occurring the day before. ECF No. 46-9 at ¶ 4.

There is no record that plaintiff ever reported the excessive force incident or requested any medical treatment for his injuries until October 29, 2018. DSSUFM at ¶ 13; ECF No. 46-4 at 2 (Medical Report of Injury or Unusual Occurrence). When interviewed on this date by medical staff, plaintiff reported being "hit in the face 2x times by Officer Rios… [and] they punched me in right side of my face" after he was handcuffed. ECF No. 46-4 at 2. No visible injuries to plaintiff were indicated on the medical form, but it did document that plaintiff reported pain in the right temporal region of his head. Id.

On October 30, 2018, plaintiff was seen at the RN clinic at the prison for complaints of right facial pain, dizziness, and a headache. DSSUFM at ¶ 14; ECF No. 46-5 at 2 (Progress Notes). The nurse who examined plaintiff indicated that he had slight swelling above his right cheek. Id. An x-ray of plaintiff's facial bones was ordered and taken on the same day. DSSUFM at ¶ 15; ECF No. 46-5 at 2-4. The x-ray report found no fractures or other injury. Id.

At plaintiff's medical visit on November 21, 2018, he was seen for complaints of ear pain, dizziness, and right facial pain that he reported experiencing since being hit by an officer on October 27, 2018. DSSUFM at ¶ 16; ECF No. 46-5 at 4-6. Plaintiff also stated that he routinely used soap and water in his ear to clean it. Id. After examining plaintiff's right ear, Dr. Hlaing

7

noted that the ear pain was "[o]f unclear etiology" and was "consistent with serous [sic] otitis media which would explain his ear discomfort, decreased hearing, and dizziness." Id.

Plaintiff received follow-up medical care for these same complaints on December 12 and 20, 2018. DSSUFM at ¶ 17-18; ECF No. 46-5 at 8-10. On December 21, 2018, plaintiff was examined by Dr. Anwar who found a mild misalignment and tenderness over his right TMJ joint. DSSUFM at ¶ 19; ECF No. 46-5 at 11.

On February 26, 2019 plaintiff was evaluated by an ear, nose, and throat (ENT) specialist at San Joaquin Hospital for his ongoing complaints of ear and jaw pain which plaintiff asserted was caused by the October 2018 use of force. DSSUFM at 20; ECF No. 46-5 at 13-14. Plaintiff also complained of hearing loss in his right ear during this appointment. Id. The ENT specialist requested a CT scan of plaintiff's facial bones as well as a formal audiogram at San Joaquin Hospital. Id. On April 18, 2019, the ordered audiogram was conducted on plaintiff and showed "[n]ormal hearing bilaterally with inconsistent speech recognition scores consistent with potential malingering." DSSUFM at 21; ECF No. 46-5 at 15-16, 18. The CT scan performed on April 30, 2019 was negative for any fracture or dislocation, an intact mandible, and no evidence of a healed fracture. DSSUFM at ¶ 22; ECF No. 46-5 at 16, 18.

Plaintiff had a follow-up appointment with the ENT specialist at San Joaquin Hospital on June 25, 2019. DSSUFM at ¶ 23; ECF No. 46-5 at 18-20. After conducting a physical examination of plaintiff's ear and reviewing the audiogram results, the specialist concluded that the results were inconsistent with plaintiff's subjective report of right-sided hearing loss which suggested malingering. Id. Regarding plaintiff's jaw pain, the ENT specialist recommended "that plaintiff be evaluated by an oral surgeon or a TMJ specialist to determine whether he actually has pain that is being caused by his TMJ or if he is malingering." ECF No. 46-5 at 19.

On July 8, 2019, plaintiff was seen by Dr. Arya at CSP-Sac for a follow-up appointment after his ENT consultation. DSSUFM at ¶ 24; ECF No. 46-5 at 21-22. Regarding right-sided hearing loss, Dr. Arya noted that plaintiff's medical file contained evidence of malingering. Id. Dr. Arya also explained to plaintiff that the ENT specialist did not diagnose plaintiff with TMJ syndrome, but only noted the tenderness and pain that plaintiff reported experiencing. Id. After

8

this appointment, Dr. Arya submitted a request for an oral and maxillofacial surgery evaluation for plaintiff. DSSUFM at ¶ 25; ECF No. 46-5 at 23. Dr. Arya's request noted that upon examination, plaintiff appeared to have normal occlusion which was contrary to plaintiff's subjective reporting. Id. Additionally, plaintiff was vague in reporting the path of pain in his jaw and did "not commit to whether he has pain with movement of the jaw or clenching of the mastication muscles." Id.

On July 24, 2019, plaintiff was evaluated by Dr. Luque at a maxillofacial surgery clinic as requested by Dr. Arya. DSSUFM at ¶ 26; ECF No. 46-5 at 24. Dr. Luque documented plaintiff's report of "severe pain over the R[ight] masseter area with good range of motion of the TMJ," but did not provide any specific diagnosis. Id. Rather, Dr. Luque addressed plaintiff's subjective complaints of jaw pain and recommended occlusal splint therapy, Gabapentin; and, a follow-up appointment in two months. Id. The follow-up appointment with Dr. Luque occurred on October 29, 2019; it included plaintiff's same complaints of jaw pain and the same recommendation from the prior appointment with no diagnosis noted. DSSUFM at ¶ 27; ECF No. 46-5 at 25-26.

On October 30, 2019, plaintiff was seen by Dr. Saravi at Salinas Valley State Prison ("SVSP") for continued complaints of severe, constant pain in his right jaw. DSSUFM at ¶ 28; ECF No. 46-5 at 28-29. Dr. Saravi observed plaintiff opening and closing his mouth repeatedly during conversation without any signs of discomfort or severe pain. Id. Dr. Saravi's assessment/plan documented plaintiff's chronic jaw pain as "TM joint disease versus malingering." ECF No. 46-5 at 29.

Plaintiff was seen again on March 25, 2020 by Dr. Singh at SVSP based on his complaints of jaw pain. DSSUFM at ¶ 29; ECF No. 46-5 at 30-32. Dr. Singh noted that plaintiff claimed that "talking a lot increases the pain," but he was "speaking without distress" and "spoke over 30 min[ute]s continuously during this encounter with minimal pauses and appeared comfortable." EVC No. 46-5 at 30-31.

No doctor ever diagnosed plaintiff with TMJ as a result of the incident on October 26, 2018. DSSUFM at ¶ 30.

////

VII.   Discussion

The undersigned finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrates the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish the existence of a genuine issue of material fact. See Matsushita Elec. Indus., 475 U.S. at 586 (1986). The court concludes that plaintiff has not submitted sufficient evidence at the summary judgment stage to create a genuine issue of material fact with respect to the excessive force claims against defendants.

The record is devoid of evidence from which a jury could reasonably conclude that plaintiff was injured as a result of any use of force by defendant Rios or White. No reasonable jury could believe plaintiff's allegation that defendant Rios struck him directly in the face multiple times when the evidence shows the absence of any injury consistent with such blows. See Scott v. Harris, 550 U.S. 372, 380 (2007) (emphasizing that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Plaintiff's assertions of injury days after the event occurred are not corroborated by any medical evidence or CDCR reports documenting any incident involving the use of force against plaintiff on October 26, 2018. The plethora of medical reports submitted by defendants contradict plaintiff's subjective reports of hearing loss as well as any diagnosis of TMJ. In this case, the absence of any discernible injury is indicative of the lack of force applied to plaintiff's face by either defendant. See Christopher v. Vang, No. 2:09-cv-3584-KJN, 2013 WL 870652 at *7 (E.D. Cal. March 7, 2013) (stating that the "extent of injury may also provide some indication of the amount of force applied."). Accordingly, there is no evidence of an injury from which a reasonable jury could infer that defendants used objectively unreasonable force against plaintiff in violation of the Fourteenth Amendment, nor could a reasonable jury accept plaintiff's version of the facts which is contradicted by all the medical evidence in this case. See Scott, 550 U.S. at 380; White v. Roper, 901 F.2d at 1507. For all these reasons, the undersigned concludes that no reasonable jury could find that defendants used excessive force against plaintiff

in violation of the Fourteenth Amendment. Defendants' motion for summary judgment should be granted.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 46) be granted;

2. Judgment be entered accordingly; and,

3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 22, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11